IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 25, 2017

**MARVIN HURST, JR. v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 107221   G. Scott Green, Judge**

_____

**No. E2016-02387-CCA-R3-PC**

_____

The petitioner, Marvin Hurst, Jr., appeals the denial of his post-conviction petition.  The petitioner argues he received ineffective assistance of counsel and that, by his actions, counsel overbore the petitioner's will resulting in the petitioner pleading guilty rather than going to trial.  Following our review, we affirm the denial of the petition.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Leslie M. Jeffress, Knoxville, Tennessee, for the appellant, Marvin Hurst, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Charme Allen, District Attorney General; and Ashley McDermott, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

**FACTS**

I.     *Guilty Plea Hearing*

On the eve of trial, the petitioner made the decision to enter a guilty plea for the sexual crimes he committed against his younger half-sister after his eighteenth birthday. For the crimes, the petitioner pled guilty on January 26, 2015, to six counts of aggravated sexual battery and one count of sexual battery by an authority figure.

The trial court then conducted a thorough plea colloquy with the petitioner wherein the court addressed each charged offense and correlating conviction, the potential sentence each conviction carried, the agreed upon sentence, and the petitioner's one hundred percent eligibility for release.[1] Specifically, the trial court noted the petitioner was originally charged, as follows: Count One, rape of a child, Tenn. Code Ann. § 39-13-522; Count Two, criminal attempted rape of a child, Tenn. Code Ann. §§ 39-12-101, -13-522; Count Three, rape of a child, Tenn. Code Ann. § 39-13-522; Count Four, aggravated sexual battery, Tenn. Code Ann. § 39-13-504; Count Five, aggravated sexual battery, Tenn. Code Ann. § 39-13-504; Count Six, aggravated sexual battery, Tenn. Code Ann. § 39-13-504; Count Seven, incest, Tenn. Code Ann. § 39-15-302; and Count Eight, sexual battery by an authority figure, Tenn. Code Ann. § 39-13-527. Pursuant to the guilty plea, the trial court explained to the petitioner that he was pleading guilty to the lesser-included offense of aggravated sexual battery in Counts One through Three, and pleading guilty as charged in Counts Four, Five, Six and Eight. Count Seven was dismissed.[2]

The trial court then reviewed the constitutional rights the petitioner was relinquishing upon entering his guilty plea. The petitioner confirmed he was not forced, pressured, or threatened into pleading guilty and that he was satisfied with trial counsel's representation. Subsequently, the State presented the following facts for the record:

> Your Honor, the State anticipates that if this case had gone to trial the witnesses listed would testify as follows, that the [petitioner's] 18th birthday was July 30th, 2010. And from the time that he turned 18 until the date listed in the indictment is right before the victim turned 13, your Honor. The victim was 11, 12, and 13 years of age at the time of these offenses. And the [petitioner] whenever she was 11 was 18, when she was 12 was 19, and when she was 13 was 20.
>
> That the [petitioner] began touching the victim's breasts in this case, your Honor. That he would touch her breast underneath her clothing. He progressed to touching her vagina, your Honor. Eventually this progressed to him inserting his fingers into her vagina. He also performed oral sex on the victim in this case whenever she was 11 and 12.

---

[1] Because the judgment forms were not made a part of the record on appeal, we are relying on the transcript of the guilty plea hearing for the details of the petitioner's sentence and plea.

[2] At the submission hearing, the trial court also accepted a guilty plea for the offenses alleged in indictment, No. 104532. Because the petitioner has not alleged any post-conviction issues relating to indictment No. 104532, we will not address the details of that plea in this appeal.

He would make her touch his penis at that time too, your Honor. And that progressed until an incident where he attempted to have sex with her. He put his penis to her vagina but did not insert his penis into her vagina, your Honor.

The victim in this case at first did not tell anyone anything that was going on and this happened for a total period of three years from the time that she was in the fifth grade until the time that she was in the seventh grade. It happened at two different houses. One house on Wilson where the victim lived. The [petitioner] would come to her house to visit and that's where the sexual assaults would take place.

Then there came a time where the victim in this case and her family were kicked out of their home on Wilson, and they moved into an apartment on the bottom floor of the [petitioner's] home on Sierra Road. The testimony would be that during that time sexual assaults happened, specifically in December of 2011.

The testimony would be that the [petitioner's] family had their car broke down and the [petitioner] on several occasions would take the victim and her older brother, who was in high school, to their schools. On one occasion in December of 2011 he took the older brother to the high school and was supposed to then take the victim in this case to the middle school, but instead of taking her to the middle school he took her to the home where they both lived. And as I said, he lived in the top of the house. He took her up to the floor where he was living and he did sexually assault her at that time. She then stayed at the top of the house for the remainder of that day unbeknownst to the other people who were in the lower floor at that time.

There was also a time in July of 2012 after the victim had turned 13 and he came down to her room and it was dark in her room, she only had her television on, and he attempted to take her clothing off. As he was doing that the victim's mother in this case observed him in the room over top of the victim like -- and the mother obviously got very upset, your Honor, and asked the victim what was going on. The victim at the time did not feel that she could tell her mother what was going on, but she did about a week to two weeks after that tell her sister Sabrina what had happened. Her sister Sabrina is also the biological sister of the [petitioner] in this case. They're half brother and half sister. And the victim was able to tell Sabrina that she had been sexually assaulted by her brother for the past three years.

- 3 -

Sabrina did call DCS and tell DCS what had been reported to her as is required by law. The Knoxville Police Department became involved in this case. Detective [Jonathan] Harris with the Knoxville Police Department after hearing a forensic interview where the victim explained everything that happened, did a follow-up regarding what had happened in December of 2011. And he was able to get records from both the high school and the middle school, and the records showed that on December the 21st of 2011 the brother had gone to the high school and he was present at the high school that day, but that the victim in this case who was supposed to be at the middle school that day was, in fact, not present at school that day. She had an absence and that absence was an unexcused absence.

The detective then went further and got records from the [petitioner's] work on this case, and he did confirm that the [petitioner] was late to work that day. He began working at eleven a.m. which was not the custom. So he corroborated the story in that way.

In addition, Detective Harris also spoke to the [petitioner] in this case and after waiving his right to have an attorney present and being fully informed of his rights, the [petitioner] did agree to speak to Detective Harris. [The petitioner] initially denied anything. He explained what had happened as just being horseplay and tickling each other.

However, as the interview progressed [the petitioner] began to tell more about what happened. [The petitioner] specifically told Detective Harris that he had thought about touching [the victim], and that it was a constant thing in his head. [The petitioner] went on to say that he never intended to hurt the victim. [The petitioner] stated that it was best for them to break paths. And then he finally did admit to touching the victim's breast. [The petitioner] admitted to taking her shirt off. And he admitted that the tickling led to more, but never specifically said what the more was.

And then finally after the detective left the room [the petitioner] wrote a note to the victim in this case, and I'm going to read the note, your Honor. It says, "I am so sorry for anything that I've put you through. None of this is your fault. It is my own mistake for letting it go this far. As for now I think we should split paths and get both of our heads on straight. I want you to know I'm sorry and that I do love you as my sister and I will be here if you need me." And then he signs his name, your Honor.

Based on all of the proof in the case the State would show that whenever the victim was under the age of 13 the [petitioner] did perform cunnilingus or oral sex on the victim. That he did attempt to have sex with her. That he did place his finger in her vagina. That he did place his hand on her vagina. That he did place his hand on her breasts. That he did place her hand on his penis. That he did at a time whenever she was over 13 put his penis on her vagina. All these events occurred here in Knox County.

After reviewing the details of the plea, the trial court held:

All right. The Court has observed [the petitioner]. He's obviously an intelligent young man. He has responded appropriately to the [c]ourt's questions. The [c]ourt finds that he is here of his own free will and volition and prepared to enter pleas of guilt as announced by the State.

The [c]ourt further finds that [the petitioner] knowingly and voluntarily has waived constitutional rights that have been explained to him here in open court and which are contained within the waiver and request for acceptance of plea of guilt.

Based on the proof and as a condition of the plea agreement, the petitioner was sentenced, as a Range II offender, to an effective twenty-year sentence to be served at one hundred percent. Upon release, the trial court ordered the petitioner to be "supervised for life under the community supervision for life provisions of the Tennessee Code Annotated." Finally, the trial court prohibited any contact between the petitioner and the victim.

II.     *Post-Conviction Evidentiary Hearing*

The petitioner filed a *pro se* petition for post-conviction relief wherein he alleged his conviction was based upon a coerced confession, his guilty plea was involuntarily entered, and he received ineffective assistance of counsel. The post-conviction court appointed counsel, and the petitioner filed an amended petition for post-conviction relief. The post-conviction court then held an evidentiary hearing during which the petitioner and his trial counsel testified.[3]

---

[3]The petitioner was originally represented by an attorney in the public defender's office. Later, because of a conflict, the petitioner was appointed private counsel. Both the assistant public defender and private counsel testified during the post-conviction hearing. In order to avoid confusion, we will refer to them as "the assistant public defender" and "trial counsel."

The petitioner testified he was born on July 20, 1992. In December 2011, his half-sister, the victim, and other family members moved into the basement of the home he lived in on Sierra Road. At the time, the petitioner was over the age of eighteen, married with a daughter of his own. The petitioner admitted he constantly thought about the victim and "things" happened between them. Separately, during his testimony, the petitioner admitted to committing at least one sexual assault against the victim when he was either twelve or thirteen, and she was five or six. The petitioner also stated he spoke by telephone to his family, including the victim, after discussing the twenty-year plea deal with trial counsel the evening before trial.[4]

The petitioner also addressed his underlying ineffective assistance of counsel claims to the post-conviction court. In doing so, the petitioner asserted trial counsel was not "fully agile" in preparing his case for trial. The petitioner claimed trial counsel did not explain who he would call as a witness at trial, did not play the recorded interviews of his family members for him prior to trial, and did not adequately prepare him to testify at trial. The petitioner stated trial counsel's only advice was to answer, "no," when asked if he had sex with the victim. Despite the alleged deficiencies, the petitioner acknowledged trial counsel hired a private investigator, interviewed the petitioner's family members, and met with him multiple times prior to trial. The petitioner also testified he and trial counsel discussed key pieces of evidence against him. For example, regarding an assault alleged to have occurred when the petitioner failed to drop the victim off at school in December 2011, the petitioner stated trial counsel discussed evidence of the victim's school records and the petitioner's work records indicating the victim was absent from school and the petitioner went to work late on the date of the alleged assault.

The petitioner also claimed counsel was ineffective for failing to attack the trial court's subject matter jurisdiction. The petitioner explained none of the alleged sexual assaults occurred after his eighteenth birthday, and as a result, he should not have been tried as an adult for the crimes. Surprisingly, during his testimony, the petitioner momentarily claimed that he believed he pled guilty to the acts that occurred when he was twelve or thirteen. In explaining this belief, the petitioner stated:

> . . . I've stated that I did do something under the age of 18 and I thought at the time that that was what we was basically going off of and now after several -- almost a year and a half of studying law myself that I was not allowed to be tried as an adult for something that happened when I was a minor. So, yes, I am guilty of something, but not as an adult. And I

---

[4]At the time of the post-conviction evidentiary hearing, the petitioner faced a pending coercion of a witness charge relating to this phone call.

feel like I got bammed to the wall for something I legitimately didn't do now.

However, when pressed, the petitioner admitted that he knew the present charges did not relate to the assault he committed at age thirteen. Furthermore, the petitioner admitted that he lived in the Sierra Road house after he got married and turned eighteen, and he acknowledged the present charges related to acts that occurred in the Sierra Road house.

The petitioner also testified that trial counsel "scared" him into taking the twenty-year plea deal. The petitioner stated:

> [I]n all honesty [trial counsel] kind of scared me into taking a plea. The whole time I really pushed for going to trial, going to trial, going to trial, and then the day before we was set to go to trial, [trial counsel] came to meet with me and said you have a zero percent chance of winning at trial. I really wouldn't even recommend me taking this case to trial. He said that if you don't take this 20 year sentence then I really -- I feel sorry for you because you're going to get 40 to 60 years. And he kept adamantly saying 40 to 60 years, so he really scared me with basically a life sentence in prison.

Despite the above testimony, the petitioner stated he understood it was his right to refuse or accept an offer from the State, noting he rejected a seventeen-year offer made on the Friday before trial. Ultimately, in relation to his post-conviction pursuits, the petitioner stated he was seeking a lower sentence, admitting: "So I mean I'm not saying I'm -- again, completely innocent, but I'm hoping that I can get another chance to provide a chance to maybe get less time this time or no time."

The assistant public defender who originally represented the petitioner testified that she met with the petitioner and discussed the charges against him.[5] During her meetings with the petitioner, the two specifically discussed the dates of the alleged assaults, the family's living arrangements, and the petitioner's exposure if convicted. After a conflict emerged, the assistant public defender provided trial counsel with her entire file and met with him to discuss the petitioner's case.

Trial counsel explained that he actively investigated the petitioner's case upon assuming it from the assistant public defender. Trial counsel met with the petitioner between six and fifteen times, hired an investigator, and interviewed the petitioner's family, including the victim. During his meetings with the petitioner, the two discussed

---

[5]See footnote no. 3.

the petitioner's charges and the sentences he faced, the potential witnesses and their probable testimony, and the evidence against him. Trial counsel initially thought the petitioner's case would come down to a "he said, she said" testimonial battle; however, upon further investigation, his trial strategy changed:

> Early in the case I believe I told him this is the type of case if somebody accuses you of something like this, regardless of what all the T.V. shows says, the jury wants to hear you say you're innocent. So you're probably going to have to testify. As I learned more about the case, I did a complete 180 on that and by the end of it I was convinced that the worst thing he could possibly do was testify. So we – [] we had a discussion about his testimony that he could if he wanted to, I believe we came to a consensus that he didn't -- the worst thing we could do is put him on the stand. And so I did not prepare him to testify because I did not believe he was going to be testifying.

Trial counsel further explained that his primary trial strategy was to attack the victim's credibility. Specifically, trial counsel sought to expose that the victim gave conflicting accounts of the allegations in Count Six, twice confirming the allegations, but once denying them altogether.

Trial counsel also addressed the petitioner's assertion that he was not eighteen at the time of the alleged crimes. Trial counsel explained his "first thinking was if I can prove that he was 17, then there is no subject matter jurisdiction . . . . That was the first thing I looked at doing and we did investigate that." As such, during his interview of the victim, trial counsel addressed each allegation in the presentment and questioned the victim's assertion that the petitioner was over the age of eighteen at the time of each allegation.[6] However, based on the victim's answers, trial counsel did not believe he would be successful challenging subject matter jurisdiction. Regardless, trial counsel detailed his strategy regarding the petitioner's age at the time of the offenses, as follows:

> I had an argument as to potential subject matter jurisdiction. I wasn't going to abandon the argument that he was really 17. Subject matter jurisdiction is something that can be raised at any time. I don't have to file it pre-trial, and so when I have a defense that can be raised at any time, I generally don't raise it pre-trial because I don't want the state to research it. I don't want them to have a good response to it. That might be sneaky, but

_____

[6]For example, trial counsel asked the victim about the allegations in Count Two. The victim stated at the time of the Count Two assault, the petitioner's daughter was alive. Trial counsel knew the petitioner's daughter was born after the petitioner's eighteenth birthday.

it is what it is. That's the way I do it. And so I was going to argue subject matter jurisdiction on everything I thought I could. I thought I was going to lose. But I thought I was going to argue it.

Finally, regarding the petitioner's guilty plea, trial counsel testified that he was "very emphatic" with the petitioner and "told him I believed that despite what I thought I could argue, that [the petitioner] had essentially a zero percent chance of winning" at trial. Trial counsel discussed all of the offers made by the State with the petitioner, recalling an initial thirty-year offer and a subsequent seventeen-year offer, both of which the petitioner declined. Regarding the State's offers, trial counsel testified:

> Oh, yeah. I mean he knows that it's entirely up to him. He knew that he could plead guilty or not, that I would give him my advice, I would give him my advice very strongly, I mean he knew that, but ultimately, you know, he could plea or he could not plea.

> There was a second offer made. It was an offer of 17 years and against my advice, he rejected that offer. So he understood that he could reject an offer because I advised him to take the 17 years, and advised him strongly enough that I wrote up a waiver and had him sign it because I thought that if he sees that there's a waiver, maybe he'll understand how serious I think he should consider -- how seriously I think he should consider this offer. And he ended up signing the waiver and rejecting the offer.

Ultimately, trial counsel opined that he believed the petitioner "decided to plea because the alternative was worse than the plea."

Finally, Detective Jonathan Harris of the Knoxville Police Department testified that the petitioner called the victim the day before he pled guilty and asked her to recant her statement regarding the allegations in the presentment. The audio recording of the phone call was played for the court.

At the conclusion of the evidentiary hearing, the post-conviction court took the petition under advisement in order to review the transcript from the guilty plea hearing. Upon its review, the post-conviction court issued an order denying the petition, and this timely appeal followed.

# ANALYSIS

On appeal, the petitioner argues the post-conviction court erred in denying his petition, alleging ineffective assistance of counsel prior to trial led him to plead guilty. In support of his claim, the petitioner contends trial counsel failed to file a motion to dismiss the case for lack of subject matter jurisdiction and trial counsel failed to adequately prepare the case or the petitioner for trial. Similarly, the petitioner also asserts trial counsel "frightened" him into entering his guilty plea. In contrast, the State contends the petitioner failed to present evidence of trial counsel's deficiencies or how his alleged deficiencies prejudiced the petitioner's guilty plea. Upon our review, we agree with the State.

The petitioner bears the burden of proving his post-conviction allegations by clear and convincing evidence. *See* Tenn. Code Ann. § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. *See Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of a trial court's application of the law to the facts is *de novo,* with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel presents mixed questions of fact and law. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this Court reviews the petitioner's post-conviction allegations *de novo*, affording a presumption of correctness only to the post-conviction court's findings of fact. *See id.*; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. *Id.* Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.*; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

A guilty plea must be knowingly, voluntarily, and intelligently entered in order to be valid. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010). The court must determine whether the guilty plea evidences a voluntary and informed decision to pursue a guilty plea in light of the alternative options available to the defendant. *Id.* In the context of a post-conviction challenge to a guilty plea, both prongs of the *Strickland* test must be met. *Garcia v. State*, 425 S.W.3d 248, 256 (Tenn. 2013). Thus, to successfully challenge his guilty plea, the petitioner must show counsel's performance was deficient, and he "must establish a reasonable probability that, but for the errors of his counsel, he would not have entered the plea." *Adkins v. State*, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *Garcia*, 425 at 257 (Tenn. 2013).

Here, the petitioner argues trial counsel's ineffective assistance led him to plead guilty "because his trial attorney did not sufficiently prepare for trial" and did not adequately prepare him to testify at trial. However, as identified by the post-conviction court, the alleged ineffectiveness highlighted by the petitioner is not supported by the proof presented. Rather, both the petitioner and trial counsel testified the two engaged in detailed discussions regarding the charges the petitioner faced, the evidence at issue in the case, the strategy trial counsel would pursue at trial, and the strengths and weaknesses of his defense. Nothing in the record indicates trial counsel's strategy was not sound.

*See Strickland*, 466 U.S. 689. Additionally, the record indicates trial counsel properly advised the petitioner as to his right to testify in his own defense if he were to go to trial.

Regarding the alleged subject matter jurisdiction issue, the record indicates trial counsel effectively pursued this potential defense until the petitioner's guilty plea negated the same. Though the petitioner claimed none of the crimes were committed after his eighteenth birthday, the petitioner discredited his own argument by acknowledging certain facts as true, including: his sister alleged the assaults occurred at the Sierra Road house, the petitioner did not live at the Sierra Road house until after his eighteenth birthday, and anything alleged to have occurred at the Sierra Road house would have occurred after he turned eighteen. Furthermore, trial counsel noted the subject matter jurisdiction defense "turned out to be not as strong as -- or anywhere near as strong as I thought it was going to be," noting his investigation revealed that the assaults occurred after the petitioner's eighteenth birthday. The post-conviction court accredited trial counsel's testimony, and nothing in the record preponderates against its factual findings. *See Tidwell*, 922 S.W.2d at 500.

In denying the petition, the post-conviction court found the petitioner "received the effective assistance of not one, but two, highly skilled and experienced trial attorneys." We agree. The petitioner has failed to overcome the presumption that trial counsel pursued "sound trial strategy" in relation to these issues. *Strickland*, 466 U.S. at 689 (internal quotations omitted). Accordingly, the petitioner has not proven trial counsel was ineffective as to any alleged deficiencies, and the petitioner cannot show how the unsubstantiated deficiencies of counsel caused him to plead guilty.

Turning to the guilty plea itself, nothing in the record indicates the plea was coerced or entered into involuntarily or as the result of fear. The evidence produced during the hearing supports the finding that the petitioner was fully aware of the nature of the guilty plea. The post-conviction court succinctly described the context of the petitioner's post-conviction claims and his guilty plea hearing, as follows:

On January 26, 2015 this petitioner, who was scheduled to go to trial on that same date for Rape of a Child, pled guilty to Aggravated Sexual Battery and accepted an agreed sentence of twenty (20) years within the Tennessee Department of Corrections [sic]. [The petitioner] now seeks post-conviction relief wherein he alleges his trial counsel was ineffective, thereby, rendering his plea of guilt constitutionally infirm.

This court conducted a detailed and meticulous Rule 11 plea hearing/colloquy with this petitioner at the time he pled guilty.[7] [The petitioner's] present claim that he was "coerced" or "scared" by this attorney's interaction with him prior to the plea is belied by the content of the plea hearing. Moreover, [the petitioner] was given the opportunity to voice any complaint he had with his attorney, yet he expressed his satisfaction with trial counsel's services. On January 26, 2015 this court observed this petitioner face to face and found his plea of guilt of [sic] be the product of a decision made of his own free will and volition. There is nothing within this record which now compels a different conclusion.

This court accredits the testimony of [the petitioner's] trial counsel . . . that [the petitioner] was faced with the likely and foreseeable prospect of being convicted of Rape of a Child which would have exposed [the petitioner] to a sentence of between forty (40) and sixty (60) years within the Tennessee Department of Corrections [sic]. The [c]ourt finds that this petitioner made the difficult, but constitutionally permissible, choice to accept twenty (20) years, rather than risk the much harsher penalty that a trial may have engendered. The court further finds that there is no evidence that any crime [the petitioner] perpetrated occurred before he turned eighteen years of age. All of the testimony is consistent that [the petitioner] had reached the age of majority when the family resided at Cierra [sic] Road, which is the location the state alleged the indicted acts of sexual abuse occurred.

This court further finds [the petitioner's] recorded conversation with the victim in this case on the night before he pled guilty significantly undermines his present credibility. This petitioner clearly attempted to manipulate the victim, his younger sister, into recanting her allegation. There is no fear in [the petitioner's] voice within this recorded call, rather there is a calculated and deliberate attempt to manipulate the criminal justice system to his benefit.[8]

. . . .

---

[7]The January 26, 2015 submission hearing lasted thirty-six (36) minutes in length.

[8][The petitioner] subsequently plead [sic] guilty to coercion of a witness based upon this phone call.

[The petitioner] made a conscious, knowing, intelligent, and voluntary choice to plead guilty on January 26, 2015. There is no evidence within this record which gives this court hesitation in making such a finding.

Our review of the transcript of the guilty plea hearing mirrors the findings of the post-conviction court. The record shows the trial court properly and thoroughly explained the nature and consequences of the petitioner's guilty plea, including the charges against the petitioner, the penalties he faced as a result of the plea, and the potential penalties he faced if he proceeded to trial. Further, the record demonstrates that at the time the petitioner entered his guilty plea, he understood he would receive a twenty-year sentence for seven sexual offenses and would avoid the indicted offenses of rape of a child and incest. Throughout the hearing, the petitioner affirmed that he understood his rights and wished to proceed with the guilty plea. The petitioner has failed to offer any evidence that preponderates against the post-conviction court's characterization of the knowing and voluntary nature of the petitioner's guilty plea. *See Tidwell*, 922 S.W.2d at 500. Accordingly, the record supports the post-conviction court's finding that "[the petitioner's] present claim that his plea was not voluntary due to the action of his trial attorney is not credible, and is contradicted by significant credible evidence within this record." As such, the record makes clear that the submission of the guilty plea was absent coercion and was performed thoroughly and properly by the trial court. The petitioner is not entitled to relief as to this issue.

As explained above, the post-conviction court found that the petitioner knowingly, intelligently, and voluntarily entered his guilty plea absent threats or coercion. Once a guilty plea is knowingly, voluntarily, and intelligently entered it is not void simply because the petitioner is no longer happy with his decision. *Robert L. Freeman v. State*, No. M2000-00904-CCA-R3-PC, 2002 WL 970439, at *2 (Tenn. Crim. App. May 10, 2002), *no perm. app. filed*. Further, in order to succeed on his ineffective assistance of counsel claim, aside from presenting clear and convincing factual evidence establishing counsel's deficient performance, the petitioner must also establish prejudice. Specifically, the petitioner must show that but for counsel's alleged deficient performance, he would have insisted on going to trial. *See Grindstaff v. State*, 297 S.W.3d 208, 216-17 (Tenn. 2009); *Strickland*, 466 U.S. at 687. The petitioner has not met this burden. No evidence exists in the record to support the petitioner's attack on trial counsel's performance or how the alleged deficient performance affected the outcome of his guilty plea. *See Strickland*, 466 U.S. at 687. Instead, the record is replete with evidence that the petitioner understood the options he faced prior to entering his guilty plea, the sentencing associated with the guilty plea, and the rights he waived upon entering the guilty plea. Thus, not only has the petitioner failed to show counsel was ineffective, but also he cannot prove he was prejudiced. Without proof of prejudice, the

petitioner's claims fail and he is not entitled to post-conviction relief on the grounds of ineffective assistance of counsel.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
J. ROSS DYER, JUDGE